06-80005

Judge: Bruce W. Black

Luc A. Despins
Scott A. Edelman
Andrew E. Tomback
Joshua R. Pater
**MILBANK, TWEED, HADLEY & McCLOY LLP**
1 Chase Manhattan Plaza
New York, NY 10005
(212) 530-5000
Counsel for Official Committee
of Unsecured Creditors
of Refco Inc., et al.

FILED
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

JUL 25 2006

KENNETH S. GARDNER, CLERK
PS REP. - MJ

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re:

REFCO INC., et al.,

Debtors.

Chapter 11

Case No. 05-60006 (RDD)
(Jointly Administered)

In a case pending in the United States Bankruptcy
Court for the Southern District of New York

## NOTICE OF MOTION

To:

Tone Grant
c/o Michael T. Hannafan
Michael T. Hannafan & Associates, Ltd.
One East Wacker Drive, Suite 1208
Chicago, IL 60601

PLEASE TAKE NOTICE that on Monday, August 7, 2006, at 10:30 a.m. (CST), or as soon thereafter as counsel may be heard, we shall appear before the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, with the presiding judge to be determined, and then and there present the motion for an Order Compelling Tone Grant To

Comply With Subpoena For Rule 2004 Examination, a copy of which is hereby served upon you.

Dated: Chicago, Illinois
      July 25, 2006

                MILBANK, TWEED, HADLEY & McCLOY LLP
                Luc A. Despins
                Scott A. Edelman
                Andrew E. Tomback
                Joshua R. Pater
                1 Chase Manhattan Plaza
                New York, NY 10005
                (212) 530-5000
                Counsel for Official Committee
                of Unsecured Creditors
                of Refco Inc., et al.

                -and-

                _____
                John A. Roberts
                Jeffrey L. Gansberg (06242943)
                Wildman, Harrold, Allen & Dixon LLP
                225 W. Wacker Drive, Suite 3000
                Chicago, IL 60606
                (312) 201-2000
                Designated local counsel

06-80005
Bruce W
Judge: Black

Luc A. Despins
Scott A. Edelman
Andrew E. Tomback
Joshua R. Pater
**MILBANK, TWEED, HADLEY & McCLOY LLP**
1 Chase Manhattan Plaza
New York, NY 10005
(212) 530-5000
Counsel for Official Committee
of Unsecured Creditors
of Refco Inc., et al.

FILED
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

JUL 25 2006

KENNETH S. GARDNER, CLERK
PS REP. - MJ

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>REFCO INC., et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 05-60006 (RDD)<br>(Jointly Administered)<br><br>In a case pending in the United States Bankruptcy Court for the Southern District of New York |

**MOTION TO COMPEL TONE GRANT TO COMPLY WITH**
**SUBPOENA FOR RULE 2004 EXAMINATION**

The Official Committee of Unsecured Creditors (the "Committee") of Refco Inc. and its affiliated debtors and debtors in possession (the "Debtors"), by its counsel, Milbank, Tweed, Hadley & McCloy LLP ("Milbank"), respectfully moves this Court for entry of an Order, under Rule 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules" or "Rules") and Federal Rule of Civil Procedure 45(e)(2)(B), compelling Tone Grant to produce in full the documents called for by the Committee's Subpoena for Rule 2004 Examination (the "Motion to Compel" or the "Motion"). In support of its Motion, the Committee states as follows:

## BACKGROUND

On November 3, 2005, the Committee moved the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") for an Order under Federal Rule of Bankruptcy Procedure 2004 directing certain entities and persons affiliated with Refco Inc. to produce certain documents (the "Rule 2004 Motion"). One such person was Grant, former President and Chief Executive Officer of the predecessor of Refco. Grant also owned 50 percent of Refco Group Holdings, Inc. ("RGHI"), which was an integral part of the fraudulent scheme that precipitated the crisis of confidence among Refco's creditors. *See generally* Declaration of Joshua R. Pater (the "Pater Decl."), Exh. J, ¶¶ 25-48 (discussing fraudulent loan transactions conducted by RGHI).

The Committee has reason to believe that, in connection with his co-ownership of RGHI, Grant received hundreds of millions of dollars in payments from RGHI and other Refco-related persons and/or entities. (Because certain of the documents supporting this belief are governed by a protective order, the contents of those documents are not disclosed here. The Committee is prepared to provide such documents separately pursuant to a Court Order.) At a minimum, we believe Grant shared in a payment to RGHI of at least $550 million. *See* Pater Decl., ¶¶ 32-33. In addition, Refco declared a dividend of $100 million for its fiscal year ending February 28, 2003, and a dividend of $120 million for its fiscal year ending February 29, 2004. *See* Pater Decl., ¶ 32. Both dividends occurred when Grant was co-owner of RGHI, which in turn owned 90 percent of Refco. If Grant (the 50-percent owner of RGHI) took one-half of RGHI's 90-percent share of those dividends, he would have reaped $99 million.

On October 10, 2005, Refco announced that its Chairman and CEO Phillip Bennett had, over the course of many years, hid the existence of a multi-hundred million dollar

receivable owed by RGHI to one or more of the Debtors. Investigations have shown that, in order to conceal this bad debt, Bennett and others conducted a quarter- and year-end scheme whereby one of the Debtors would loan money to a third party, which would make a short-term loan to RGHI, which in turn allowed RGHI to pay down the receivable balance. These transactions served no legitimate business purpose, and were unwound shortly after the accounting period ended. The disclosure of this fraud precipitated a rapid decline in public confidence in the Debtors, culminating in the Debtors' bankruptcy filing on October 17, 2005.

Milbank served a Subpoena for Rule 2004 Examination on Tone Grant on December 6, 2005, along with a copy of the Bankruptcy Court's Order granting the Rule 2004 Motion, and a Court-approved Schedule of Documents to be Produced (collectively, the "Subpoena"). To cure a defect in service, Milbank again served the Subpoena on Grant on January 27, 2006. *See* Pater Decl., at ¶¶ 5-7.

To date Grant has produced only 12 documents in response to the Subpoena, which documents comprise 499 pages. *See* Pater Decl., ¶¶ 6, 19, 22, 26. Grant also sent his Response And Objections Of Tone Grant To Third Party Document Subpoena (the "Response And Objections"). *See* Pater Decl., Exh. B.

On October 17, 2005, each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* With the exception of Debtor Refco Capital Markets, Ltd., the Debtors continue to manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On October 28, 2005, the U.S. Trustee appointed the Committee. The U.S. Trustee reconstituted the Committee on March 29, 2006 and July 21, 2006.

3

This Court has jurisdiction over this discovery dispute, as the Subpoena was issued from the Northern District of Illinois. *See* Bankruptcy Rule 9016; Fed.R.Civ.P. 45(c)(2)(B); Pater Decl., Exh. A, at 2; *see also* Fed.R.Civ.P. 37(a)(1).

## DISCUSSION

### I. DISCOVERY UNDER RULE 2004 IS BROADER THAN DISCOVERY UNDER THE FEDERAL RULES OF CIVIL PROCEDURE

In the Response And Objections Grant improperly suggests that this discovery dispute is governed by the Federal Rules of Civil Procedure. *See, e.g.*, Pater Decl., Exh. B, ¶ 2(b)(i) ("The documents requested . . . are not reasonably calculated to lead to the discovery of admissible evidence as to [Grant]."); *see also* Pater Decl., ¶ 26 (quoting similar language in a letter from Michael T. Hannafan, counsel to Grant); Fed.R.Civ.P. 26(c)(1) (permitting discovery of information that "appears reasonably calculated to lead to the discovery of admissible evidence"). Yet discovery under Bankruptcy Rule 2004 is much broader than under the Federal Rules of Civil Procedure. *In re Handy Andy Home Improvement Ctrs., Inc.*, 199 B.R. 376, 380 (Bankr. N.D. Ill. 1985) ("An investigation under Fed. R. Bankr. P. 2004 may seem analogous to the discovery provisions of the Federal Rules of Civil Procedure Federal Rules, but the provisions are actually quite different."); *In re Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985) ("The general rule is that the scope of a Rule 2004 examination is very broad and great latitude of inquiry is ordinarily permitted.") (citing cases). Indeed, a Rule 2004 examination "can legitimately be in the nature of a 'fishing expedition.'" *In re Wilcher, supra*, 56 B.R. at 433 (citing *In Re Vantage Petroleum Corp.*, 34 B.R. 650, 651 (Bankr. E.D.N.Y. 1983)); *see also In re Handy Andy Home Improvement Ctrs., Inc., supra*, 199 B.R. at 380 (same) (citation omitted).

As a general matter, the Bankruptcy Rules provide that a Rule 2004 examination relates to "the acts, conduct, or property or to the liabilities and financial condition of the debtor,

4

or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Bankruptcy Rule 2004(b). That is, contrary to Grant's position, and unlike practice under the Federal Rules of Civil Procedure, discovery sought under Rule 2004 need not be calculated to lead to evidence admissible in litigation.

In any event, the Committee certainly may use Rule 2004 to investigate potential claims against Grant. A creditors' committee may use Rule 2004 to "investigat[e] any potential causes of action which might be asserted by the Committee[] or the Debtor for the benefit of unsecured creditors." *In re Handy Andy Home Improvement Ctrs., Inc., supra*, 199 B.R. at 379; *see also In re Wilcher, supra*, 56 B.R. at 433 ("Rule 2004 is substantially a 'pre-litigation device for assessing whether grounds exist to commence an action . . . .'") (quoting *In re French*, 145 Bankr. 991, 992 (Bankr. D.S.D. 1992)).

## II. GRANT HAS NO LEGITIMATE OBJECTION TO PRODUCTION

Grant's objections to the Subpoena essentially are twofold: (1) Grant claims that his involvement with Refco was so limited that documents in his possession are not relevant to the Debtors' bankruptcy; and (2) Grant argues that the Committee can more easily obtain documents from other parties. *See* Pater Decl., Exh. B, at 2-3. Given Grant's extensive involvement with the Debtors, as well as the Debtors' purposes in seeking this discovery, Grant's objections are without merit.

### A. Grant's Involvement With And Ownership Of Refco Make Him A Highly Relevant Player In This Bankruptcy

Throughout this discovery dispute Grant has attempted to downplay his involvement with the Debtors. In his Response And Objections Grant initially suggested that he was merely a "former employee of Refco," whose employment was terminated in 1998, and who had not been involved with Refco in "any managerial or consulting role" since that time. *See*

5

Pater Decl., Exh. B, ¶ 2(a)-(b). Grant's position apparently is that his purportedly limited role renders documents in his possession irrelevant.

This is a misleading portrayal of Grant's involvement with the Debtors. In truth, Grant was a central figure in the events leading to the Debtors' bankruptcy. Grant was Refco's chief executive before Phillip Bennett succeeded him in that post. *See* Pater Decl., Exh. H, at 1. Moreover, Grant's involvement with the Debtors did not end in 1998, as Grant has suggested. Rather, until August 2004, Grant was a 50 percent owner of RGHI, the private holding company that owned up to 90 percent of Refco. (The other 50 percent of RGHI was owned by Phillip Bennett.) *See* Pater Decl., Exh. J, ¶¶ 50-51.

In later conversations with Milbank, Grant's counsel grudgingly have acknowledged that Grant's involvement with the Debtors lasted at least until August 2004, and did not end in 1998 as was previously suggested. *See* Pater Decl., ¶ 22-23.

Notwithstanding this acknowledgement, Grant's counsel apparently hew to the position that Grant's involvement is too limited or remote in time to be relevant to the Debtors' bankruptcy proceeding. *See* Pater Decl., ¶ 24. Indeed, Grant's counsel has suggested to Milbank that Grant's ownership of RGHI is irrelevant to the Debtors' bankruptcy, given that RGHI is not itself in bankruptcy. *See id.*, ¶ 29. Grant's positions are untenable in light of the law regarding Rule 2004 investigations. In light of RGHI's (and Grant's) central role in causing the Debtors' bankruptcy, this position is merely a hollow attempt to elevate form over substance.

As discussed above, discovery under Rule 2004 can amount to a "fishing expedition." *See supra*, at 4. Yet the net need not be cast widely at all to cover Grant, who is Refco's former chief executive, and past co-owner of a company that received hundreds of millions of dollars of cash transfers from the Debtors.

For purposes of this discovery dispute the Committee need not divulge its litigation strategy against Grant. Yet it safely can be said that Grant faces substantial liability for, among other things, his co-ownership of RGHI. This exposure may be the reason that, within weeks of the Debtors' bankruptcy filing, Grant transferred two apartments that he owned out of his name and into trusts in the names of his wife and neighbor. *See* Pater Decl., ¶ 34.

Transfers made from a Debtor to RGHI are potentially recoverable under a number of provisions of the Bankruptcy Code that permit recovery of, for example, fraudulent transfers. *See* 11 U.S.C. § 548. As co-owner of a company that received exorbitant payments from the Debtors in suspicious circumstances, as set forth above, Grant simply cannot reasonably claim to be irrelevant to their bankruptcy proceedings.

This discussion of Grant's liability as co-owner of RGHI is grounded in fact. The Committee already has filed an analogous lawsuit to recover transfers made from the Debtor Refco Group Ltd., LLC ("RGL") to RGHI, and then subsequently transferred from RGHI to the BAWAG bank. *See* Pater Decl., Exh. J. In this litigation the Committee moved *ex parte* for an attachment of over $1.3 billion; the Bankruptcy Court granted the attachment, and the case resulted in a $675 million settlement agreement. *See id.*; Pater Decl., Exh. K. The Committee's legal argument was premised entirely on the avoidability of certain transfers from RGL to RGHI – which transfers amounted to over $1.3 billion. *See* Pater Decl., Exh. J, ¶¶ 54-57, 121-49. Were there anything to Grant's position regarding the relevance of RGHI to the Debtors' proceedings, the Committee never could have obtained the extraordinary relief of an attachment based on this legal theory. Therefore, Grant's position regarding his relevance to the Debtors' bankruptcy is inconsistent with the Bankruptcy Code and with previous litigation in this

7

bankruptcy – litigation of which Grant's counsel has been made aware by Milbank. *See id.*, ¶¶ 26, 28.

Grant's counsel has specifically referenced documents showing dividends Grant received while he owned part of Refco, yet his counsel has stated that Grant will not produce such documents absent a court order. *See* Pater Decl., ¶ 11. This position is at odds with the law of this circuit, which provides that Rule 2004 examinations are broad enough to inquire into any potential causes of action that might be asserted on behalf of the Debtors. *See In re Handy Andy Home Improvement Ctrs., Inc., supra*, 199 B.R. at 379. As the BAWAG litigation shows, funds transferred from the Debtors to RGHI and then subsequently transferred to another party – even when the transfers occurred well over a year before the bankruptcy filing – plainly create grounds for causes of action on behalf of the Debtors.

### B.   Discovery From Grant Is Not Duplicative Of Other Discovery

Grant also claims that documents in his possession would be more easily obtained from other sources. *See* Pater Decl., Exh. B, ¶ 2(b)(iii); Pater Decl. ¶ 23. This is both irrelevant and untrue – irrelevant because it apparently mistakenly invokes the Federal Rules of Civil Procedure, *see supra*, at 3-4, and untrue because the Committee has no way of ascertaining certain vital information without discovery from Grant.

Grant's counsel effectively has conceded that Grant possesses documents regarding "dividends" paid to Grant while Grant co-owned Refco. *See* Pater Decl., ¶ 11. This is one type of document that is unquestionably called for by the Subpoena and relevant to the Debtors' bankruptcy proceedings. *See* Pater Decl., Exh. A, Schedule 1, at 8. Further, contrary to Grant's assertion, such documents are not more easily obtained from other sources. The Committee does not have unfettered access to documents held by either the Debtors or RGHI.

Moreover, under the circumstances here, where fraudulent conduct permeates the Debtors and its affiliates, the Committee is entitled to verify the comprehensiveness of the production of any given party by requesting the same category of documents from another party with access. Thus production of such and other documents by Grant is not only the easiest method of discovery – in fact it is the only way for the Committee to adequately assess this highly relevant issue.

### C. Grant Has Not Made A Good-Faith Effort At Compliance

Throughout this discovery dispute, the Committee has sought to avoid having to move to compel production by Grant, whose counsel has conceded that Grant possesses other documents responsive to the Subpoena. *See* Pater Decl., ¶ 11. The Committee sent Grant's counsel filings from the BAWAG litigation in order to demonstrate why documents in Grant's possession are crucial to the bankruptcy proceedings. *See id.*, ¶ 28, 30. Grant has offered no counterargument to this; he merely continues to insist erroneously that documents in his possession are not relevant to the Debtors' bankruptcy.

In another attempt to avoid a motion to compel, the Committee made an agreement with Grant's counsel whereby counsel would send the Committee a letter listing categories of documents in Grant's possession. *See id.*, ¶ 11-13. Grant's counsel repeatedly promised to send this letter. *See id.*, ¶ 14, 16, 21. Grant's counsel never sent the letter. *See id.*, ¶ 25.

### CONCLUSION

Documents in Tone Grant's possession regarding the Debtors and RGHI clearly are responsive to the Subpoena and are an appropriate target of a Rule 2004 examination. Grant has no valid justification for his refusal to comply with the Subpoena.

WHEREFORE, the Committee respectfully requests entry of an Order, substantially in the form annexed hereto as Exhibit A, directing Tone Grant to produce documents requested in the Subpoena, and granting the Committee such further relief as is just and proper.

Dated: Chicago, Illinois
      July 25, 2006

                                MILBANK, TWEED, HADLEY & McCLOY LLP
                                Luc A. Despins
                                Scott A. Edelman
                                Andrew E. Tomback
                                Joshua R. Pater
                                1 Chase Manhattan Plaza
                                New York, NY 10005
                                (212) 530-5000
                                Counsel for Official Committee
                                of Unsecured Creditors
                                of Refco Inc., et al.

                                -and-

                                /s/ John A. Roberts
                                Jeffrey L. Gansberg (06242943)
                                Wildman, Harrold, Allen & Dixon LLP
                                225 W. Wacker Drive, Suite 3000
                                Chicago, IL 60606
                                (312) 201-2000
                                Designated local counsel